

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

**JOHN L. HILL.**
**ATTORNEY GENERAL**

June 8, 1976

The Honorable Hugh C. Yantis, Jr.       Opinion No. H-833
Executive Director
Texas Water Quality Board               Re:  Whether boat certi-
1700 North Congress Avenue              fication fees erroneously
Austin, Texas   78701                   collected by the Water
                                        Quality Board can be
                                        refunded.

Dear Mr. Yantis:

In Attorney General Opinion H-716 (1975) this office advised you that a provision in the general appropriations act specifies that any money deposited into the State Treasury which is "subject to refund as provided by law" is appropriated for that purpose. We said the provision would apply to boat certification fee refunds "necessary to reimburse persons entitled by general law to refunds of money placed in the special [boat certification fee] fund." See Acts 1975, 64th Leg., ch. 743 at 2417; Water Code § 21.097(c).

You have now asked if the money in the boat certification fee fund is "subject to refund as provided by law" in four specific situations:

> 1.  In the instance in which a local governmental entity is the designated certifying authority, an applicant already certified by that entity mistakenly applied for and remitted fees for certification by this office.
>
> 2.  Persons have sent in applications for certification when they operate boats in salt water only. The law and this Board's regulations apply only to boats operating on inland freshwaters.

3. Persons have applied for certification
when their boats have no permanent sleeping
facilities and no marine sanitation device,
in which case there is no need for certification.

4. Persons have submitted payment in excess of
the amount required for certification.

In the first three cases, certification may not be properly
given, and in all four cases, the fees were accepted and
deposited before the error was discovered.

Section 21.097(c) of the Water Code, which governs the
collection of boat certification fees and the establishment
of the fund into which they are paid, does not itself expressly
authorize refunds for any reason, but in our opinion, refunds
can be made if authorized by common law. Cf. Attorney General
Opinion H-716 (1975). We think the appropriation act proviso
permitting refunds as provided by law is meant to square
with article 3, section 44 of the Texas Constitution, which
prohibits the Legislature from granting "by appropriation,
or otherwise, any amount of money out of the Treasury of the
State, to any individual, on a claim, real or pretended, when
the same shall not have been provided for by pre-existing law."

In explaining the constitutional restriction, it is said
with ample support in 52 Tex. Jur.2d, State of Texas § 40
at 750:

> [T]he legislature may not appropriate
> state money to any individual unless,
> at the time the appropriation is made,
> there is already in force some valid
> law constituting the claim that the
> appropriation is made to pay a legal
> obligation of the state. By that
> legal obligation is meant an obligation
> such as would form the basis of a judgment
> against the state in a court of competent
> jurisdiction in the event the state should
> permit itself to be sued. The term 'pre-
> existing law' does not necessarily mean

> pre-existing statutory law. . . . But it is held that a moral obligation will not authorize an appropriation by the legislature, even where the state has received the benefits of the unauthorized contracts of its officers or of unauthorized taxes voluntarily paid into the treasury.

We discussed in Attorney General Opinion H-548 (1975) the rules applicable to the refund of taxes where no statute applies:

> (1) a person who voluntarily pays an illegal tax has no claim for repayment;
>
> (2) a person paying an illegal tax under duress has a valid claim for repayment;
>
> (3) duress in the payment of an illegal tax may be either express or implied, and a legal duty to refund exists in both cases;
>
> (4) a taxpayer need not take the risk of incurring the threatened penalties or punishments while the invalidity of the tax is being litigated in order to claim duress; and
>
> (5) in the absence of a statute to the contrary, it is immaterial to the taxpayer's right of repayment whether or not the tax was paid under protest.

These rules, laid down by the Texas Supreme Court in National Biscuit Co. v. State, 135 S.W.2d 687 (Tex. Sup. 1940), have been applied to the refund of fees, as well as of taxes. Crow v. City of Corpus Christi, 209 S.W.2d 922 (Tex. Sup. 1948); Attorney General Opinions M-1048 (1972), WW-834 (1960), WW-749 (1959), O-6974 (1945). Cf. Attorney General Opinions M-576 (1970), WW-364 (1958), WW-218 (1957), O-7113 (1946), O-6282 (1945).

In the above-described fact situations, the money received has already been paid into the state treasury. Under the ational Biscuit Co. rules, the payments must be considered voluntary and not refundable unless they were made under duress, express or implied. The most recent Supreme Court case on the duress necessary to entitle a payor to a refund is State v. Connecticut General Life Insurance Co., 382 S.W.2d 745 (Tex. Sup. 1964), which involved occupation tax overpayments. The Court held that the taxes there were paid under duress because an act of the Commissioner of Insurance caused or resulted in an overpayment of taxes by the insurance organization, the payment of which was necessary to avoid loss of the right of the insurance company to do business in this state. See also Crow v. City of Corpus Christi, supra.

In the examples you have given all the payments were apparently made not only to secure certification, but to avoid the legal penalties attached to noncompliance with the certification law. You advise that boat owners received mass mailings from your office which included an official letter explaining the certification program, an application form for certification, a list of Water Quality Board district offices, a copy of House Bill 1422, enacting the certification law, and a copy of Board Order No. 74-0521-4, implementing the law.

Boat owners were advised by the letter sent them that persons failing to comply with the regulations contained in the Order might be found guilty of a misdemeanor and, upon conviction, fined from $25 to $200. It has been suggested that the letters sent were confusing and ambiguous as to the boats for which certification was required, the particular certifications necessary, the governmental units which would perform necessary inspections and make certifications, and the fee payments necessary to avoid the penal provisions of the law.

The definition of "duress" as a legal concept -- the question of what is necessary to legally constitute "duress" -- is a question of law. State v. Connecticut General Life Insurance Co., supra. But whether or not a particular person in a particular transaction actually acted under legal duress, express or implied, is a question of fact.

This office does not decide disputed questions of fact in the opinion process, but if the facts are as stated above and if the payments or overpayments described in the four examples you give actually resulted from a misapprehension of fact or law induced by the Water Quality Board or from a threat of penal prosecution upon failure to pay, then the cited authorities indicate there is pre-existing law to support refunds of boat certification fees improperly collected in the manner described.

## S U M M A R Y

Improperly collected boat certification fees may be refunded if payment of the fees resulted from a misapprehension of fact or law induced by the Water Quality Board or from a threat of penal prosecution upon a failure to pay.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb